UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,           Case No. 23-cr-20245

v.                     Hon. Judith E. Levy

OMAR SHORTER JR.,

      Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

## I.    Introduction



***Image 1***: Omar Shorter Jr. straw purchasing a firearm at a Federal
Firearms License ("FFL")

Omar Shorter Jr. filled out dozens of "Firearms Transaction
Record," or ATF Form 4473 representing that he was the actual
purchaser of the firearm, when in fact he was straw purchasing for

1

others. As such, he is in this incredibly unfortunate situation because he purchased guns for others and made this into a business. Shorter purchased at least thirty-nine firearms since October of 2020. Ten of those firearms were recovered in felony related criminal investigations. The firearms were recovered by law enforcement in conjunction with narcotics seizures, one stolen vehicle recovery, felony concealed weapons investigations, and three non-fatal shootings. Following trial, another one of Shorter's guns was recovered by police. This highlights the problem with Shorter's choice to buy firearms on behalf of others. Often, those who commit crimes don't go through the process of background checks and buy their firearms legally from a store or gun show but instead obtain them from someone who did.

He now stands convicted of engaging in the business of dealing firearms without a license, violating 18 U.S.C. § 922(a)(1)(A) and two counts of false statement during the purchase of a firearm violating 18 U.S.C. § 924(a)(2). For the following reasons, a guidelines sentence is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## II.    Facts and Procedural History

Having sat through trial in this case, the Court undoubtedly remembers the facts of this case. These crimes are all alleged to have occurred on or about July 9, 2020, and continue through on or about December 9, 2022, within the Eastern District of Michigan. In total, Shorter Jr. purchased 39 guns. He registered two firearms and reported one of the registered firearms stolen. Nine of the guns were recovered from other persons during felony investigations. On December 9, 2022, Shorter Jr. was observed at Action Impact with two other individuals and was suspected of straw purchasing. This was later confirmed to be true through cash app records and Shorter's confession. On July 19, 2023, a federal search warrant was executed at Shorter's home, and only two firearms were present. A search warrant was subsequently completed for Shorter Jr.'s cell phone, and text messages between him and his child's mother on December 9, 2022, imply that Shorter Jr. charges a fee to straw purchase.

Following Shorter's conviction an additional gun was recovered. So, in total, ten of Shorter's guns have been recovered by law enforcement.  *See* diagrams below.

3



***Diagram 1 -3:*** Depicting guns purchased by Shorter with guns recovered by law enforcement before trial circled in red and the additional gun recovered circled in green.

On February 14, 2024, a grand jury issued a three-count superseding indictment charging Shorter with two counts of false statement during the purchase of a firearm and one count of engaging in the business of dealing firearms without a license. *Id.* ¶ 4. On April 10, 2024, the defendant was found guilty of Counts 1 through 3 of the superseding indictment by a jury verdict. *Id.* ¶ 6.

What the court did not hear at trial is how Shorter's guns were recovered. When guns are recovered by law enforcement during felony arrest, the ATF keeps track of these recoveries through the National Tracing Center which generates Firearms Trace Summaries. Several Firearms Trace Summaries were associated with this case listing Shorter as the purchaser of a firearm but another individual as the person the firearm was recovered from. The government offers context to each gun recovery by law enforcement where Shorter is the purchaser, but the gun is recovered from individuals other than Shorter below.

### 1. *FN Model Five-SeveN purchased on October 20, 2020*

On October 31, 2020, Shorter's FN pistol was used in a non-fatal "drive-by" shooting along with two other unrecovered firearms. The

5

victim was shot two times, and an estimated 48 rounds were fired.  At the scene 18 casings matching Shorter's FN pistol were recovered.  On February 13, 2021, the FN pistol was again used in a shooting in the city of Detroit with two casings were located at the scene.  On February 17, 2021, in conjunction with that shooting investigation a suspect was arrested, and Shorter's FN pistol was seized from the suspect's vehicle.

2. *Anderson Manufacturing, AM-15, 5.56x45mm purchased on October 24, 2020*

On August 4, 2022, Shorter's AM-15 pistol was recovered from an abandoned lot following an incident where a three-year-old child was accidently shot.  Responding officers located the scene inside of a residence, where bloody clothing and a fired projectile were found, however the firearm had been removed from the location. Subsequently, investigators were notified the firearm had been disposed of near an abandoned property in the city of Detroit.  At the time of the recovery the firearm had ammunition in the magazine and the selector switch was on hot to the touch and described as being on "fire."

3. *Three Glock pistols and ATI Omni Hybrid guns purchased on October 26, 2020*

On October 26, 2020, Shorter spent over four thousand dollars on five firearms that he purchased from Universal, an FFL in Hazel Park. Of those five guns, four were later recovered in separate incidents. On November 9, 2022, DPD officers arrested an individual following a traffic stop where he was found in possession of Shorter's Glock pistols and a 31 round magazine which has concealed under the front passenger seat of the vehicle. On November 22, 2021, DPD officers arrested an individual with one of the Glock pistols Shorter purchased along with suspected oxycodone and marijuana in the city of Detroit. On August 16, 2022, DPD officers recovered the third Glock pistol Shorter purchased from an individual during his arrest following a domestic assault where the individual allegedly pointed a pistol in a victim's face and threatened to kill her. Lastly on March 18, 2022, one of the ATI Omni Hybrid guns was recovered from a hotel room hidden on a bed and under the covers. The individual that purchased the hotel room had been asked to leave for being disorderly.

### 4. *Glock pistol purchased on July 7, 2021*

On July 7, 2021, Shorter purchased a Glock model 43 pistol. Three months later, on September 14, 2021, an individual was arrested for carrying Shorter's pistol concealed in a vehicle in the city of Detroit.

### 5. *Glock pistol purchased on August 1, 2021*

On August 1, 2021, Shorter purchased a Glock model 23 pistol. Four months later, on September 14, 2021, an individual was arrested following an incident related to a stolen vehicle investigation in Detroit. The individual was not suspected of stealing the vehicle. However, he was found to be carrying Shorter's Glock pistol at the time of his arrest.

### 6. *Glock pistol purchased on August 18, 2021*

On August 18, 2021, Shorter purchased a Glock Model 26 from Five Star Pawn. The firearm was recovered in possession of an individual on August 27, 2021.  This is one of the same individuals that Shorter straw purchased pistols for later in December 2022, which is the basis for one of his false statements during the purchase of a firearm conviction.  This gun had four NIBIN leads related to four separate shootings between August and September 2021.

### 7.  *Post trial, recovery of Glock pistol purchased on May 15, 2021*

Following Shorter's trial, one of the guns he purchased in 2021, a Glock 30 pistol was recovered from an individual.  *See* DPD Incident Report 240613-0182.  On June 13, 2024, Detroit police officers executed narcotics search warrant at a home. The search warrant resulted in the recovery of controlled substance, scale, approximately $3,500 in cash, and Shorter's gun.

## III.  Guidelines Calculation

Although the sentencing guidelines are advisory, the Court must nonetheless begin its sentencing analysis by properly calculating the applicable range defendant faces.  *See United States v. Booker*, 543 U.S. 220, 245 (2005).  Here, in the PSR probation calculates that Shorter's guideline range is 27-33 months' imprisonment.  PSR ¶ 92.  The defendant's base offense level is 12 under the 2021 U.S.S.G. § 2K2.1(a)(7).  *Id*. ¶ 52.  His total offense level is 18 after adding six points as a specific offense characteristic since the offense involved more than 25 firearms and less than 99 firearms.  *Id*. ¶ 53.  Shorter has no criminal history, but the offense involves selling guns so he is

therefore not eligible for the zero point offender adjustment under U.S.S.G. § 4C1.1(7).

Shorter raises an objection the scoring of section §2K2.1(b)(1)(C) of which U.S. Probation Office and the government responded to. *See* ECF No. 59 at Pg ID 372-73. In sum, the government and probation agree that the offense involved 39 guns and that the guideline provision applies.

## IV.   Sentencing Factors

In 18 U.S.C. § 3553(a), Congress provided the factors that courts must consider when imposing a sentence. The Government addresses the most relevant § 3553(a) factors below.

### A.   Nature and Circumstances of the Offense, 18 U.S.C. § 3553(a)(1)

Shorter's offense was grossly irresponsible. To begin, like obtaining a driver's license, there is a process and rules to ensure the safety of the community. Similarly, purchasing a gun involves a process to make sure that those who obtain guns do so in a manner to ensure the safety of the community. Straw purchasing undermines laws designed to prevent gun violence and prohibit those who pose a serious

risk to public safety from gaining access to firearms. Shorter

disregarded the process and ignored the rules for his own personal gain.

Second, the government acknowledges that Shorter himself is not

alleged to have committed any violence, his choice to purchase weapons

for others help facilitate violence in the community. Of most concern,

his guns were involved in shootings, narcotic transactions, and domestic

violence assaults. Of the guns Shorter purchased, at least 20 guns

remain unaccounted for and potentially in the hands of individuals who

may commit additional crimes.

Lastly, in completing the search of Shorter's home, agents found a

Romar, model Micro Draco, unsecured within feet of where children

slept. So even the guns that Shorter did actually purchase and possess

for himself were stored in a manner that presented danger to his own

home. In all, the dangerous and reckless nature of his choices calls for a

Guidelines' sentence.

## B.   History and Characteristics of the Defendant, § 3553(a)(1), and Need to Protect the Public § 3553(a)(2)(C)

As to personal background, Shorter is a 26-year-old father of

three. He has the support of his family and is described as a "good

father" and "hard working."  Shorter's history as it relates to adverse childhood experience, substance abuse, mental and emotional health are all unremarkable. Of most significance, Shorter has no prior criminal history.

On the other hand, Shorter committed the offense he was convicted of while also allegedly engaging in unemployment fraud.  His fraud likely funded some of the offense conduct completed in this case including the purchase of five guns on one date.  As such, while Shorter has no criminal history, he likely committed a series of crimes at the same time. A custodial sentence may protect the public from further criminal conduct by this defendant.

## C.     The Advisory Guideline Range, 18 U.S.C. § 3553(a)(4)

The goals of the sentencing guidelines are to carry out the objectives of 18 U.S.C. § 3553(a).  *See United States v. Rita*, 551 U.S. 338 (2007).  Thus, despite their advisory nature, they remain an important factor in fashioning a just sentence.  As the Supreme Court stated in *Rita*, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 345.

12

The Sixth Circuit took this principle one step further in *United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008).  In *Vonner*, the Court recognized that the § 3553(a) factors seek to balance Congress' competing interests in consistency, and then held that a confluence between the national views of the sentencing commission and the independent views of a sentencing judge results in a "double determination" which significantly increases the likelihood that a sentence is reasonable.  *Id.* at 389.  A custodial sentence within the guidelines is reasonable and appropriate here.

## D.   Adequate Deterrence, § 3553(a)(2)(B), and the Need to Avoid Unwanted Sentence Disparities, § 3553(a)(6)

Shorter's sentence should consider not only the scope and seriousness of his criminal conduct but also the need to deter future crimes—both by Shorter and others who may consider straw purchasing.  In sentencing Shorter to a custodial sentence, the public may realize the severity of this offense and why it is so dangerous and how it contributes to overall gun violence.

According to the United States Sentencing Commission and its Judiciary Sentencing Information ("JSIN") tool, during the last five fiscal years, defendants with similar records who have been found

13

guilty of similar conduct received an average length of imprisonment imposed of 26 months and a median length of imprisonment imposed of 27 months.  The Government, therefore, submits that a custodial sentence within the guidelines will consider sentencing parameters of similarly situated individuals.

## V.   Conclusion

Then Government recommends a guideline sentence within Shorter's 27–33-month guideline range.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Jasmine Ayana Moore*
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9759
Email: Jasmine.moore@usdoj.gov

Dated: November 29, 2024

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 29, 2024, I electronically filed the Government's Sentencing Memorandum with the Clerk of the Court of the Eastern District of Michigan using the ECF filing system, which will send notification to all counsel of record via email.


*s/Jasmine Ayana Moore*
Jasmine Ayana Moore
Assistant United States Attorney